CASE 0:08-cv-05001-DSD-TNL   Document 106-1   Filed 04/02/10   Page 1 of 12

# EXHIBIT 1

# OFFICE OF THE RAMSEY COUNTY ATTORNEY

Susan Gaertner, County Attorney

---

50 West Kellogg Boulevard, Suite 560 • St. Paul, Minnesota 55102-1556

Telephone (651) 266-3222 • Fax (651) 266-3032

Civil Division

November 6, 2009

Roderick J. Macpherson III  
Minnesota Disability Law Center  
430 First Avenue North  
Suite 300  
Minneapolis, MN 55401

Judith A. Hanson  
Office of the St. Paul City Attorney  
750 City Hall/Courthouse  
15 West Kellogg Boulevard  
St. Paul, MN 55102

Re: **Douglas Duane Bahl and Susan Kovacs-Bahl v. County of Ramsey, Ramsey County Sheriff's Department and City of St. Paul**  
Court File No.: 08-CV-5001 DSD/JJG

Dear Counsel:

Enclosed herewith and served upon you by U. S. Mail, please find Ramsey County's expert identification in the above-referenced matter:

James H. Bruton.

Mr. Bruton will testify regarding detention practices in this case.

Mr. Bruton has extensive relevant experience, including as a bail evaluator, Ramsey County; juvenile investigator; juvenile detention worker; juvenile probation officer; adult probation officer; Director of Internal Affairs, Minnesota Correctional Facility, Oak Park Heights; Vice Chair, Minnesota Parole Board; Executive Officer, Adult Release, Minnesota Department of Corrections; Superintendant, Ramsey County Correctional Facility; Deputy Commissioner of Corrections, Institutions Division; and Warden, Minnesota Correctional Facility, Oak Park Heights. His educational achievements are to the Master's level.

Thank you for your attention to this matter.

Very truly yours,

Thomas E. Ring  
Assistant County Attorney

# EXHIBIT 2

DATE:      December 3, 2009

TO:        Mr. Thomas E. Ring
           Assistant Ramsey County Attorney

FROM:      James H. Bruton

SUBJECT:   Invoice for Expenses
           Douglas Duane Bahl and Susan Kovacs-Bahl v. County of Ramsey, Ramsey
           County Sheriff's Department and City of St. Paul
           U.S. District Court File No.: 08-CV-5001 DSD/JJD

Expert Witness Hourly Rate at $240 per hour x 51 hours = $12,252 (includes $12.00 for parking on 11/19/09. Receipt enclosed.

Dates of Case Work: (2009)

| Month | Day | Time | Activity | | Hours |
|---|---|---|---|---|---|
| October | 15 | 2:00 - 3:30 PM | Review of Documents | = | 1.5 Hours |
| November | 1 | 6:30 - 8:30 PM | Review of Documents | = | 2.0 Hours |
| November | 2 | 12:00 - 12:30 PM | Telephone/Co. Atty. | = | 0.5 Hours |
| November | 5 | 1:10 - 2:10 PM | Review of Documents | = | 1.0 Hours |
| November | 5 | 6:30 - 7:30 PM | Review of Documents | = | 1.0 Hours |
| November | 7 | 4:40 - 5:40 AM | Review of Documents | = | 1.0 Hours |
| November | 8 | 12:15 - 2:15 PM | Review of Documents | = | 2.0 Hours |
| November | 10 | 10:00 - 11:30 AM | Review of Documents | = | 1.5 Hours |
| November | 10 | 1:00 - 2:00 PM | Review of Documents | = | 1.0 Hours |
| November | 11 | 9:30 - 11:00 PM | Review of Documents | = | 1.5 Hours |
| November | 11 | 12:45 - 1:45 PM | Review of Documents | = | 1.0 Hours |
| November | 12 | 11:00 - 12:00 PM | Review of Documents | = | 1.0 Hours |
| November | 13 | 11:30 - 12:30 PM | Review of Doc/phone | = | 1.0 Hours |
| November | 13 | 2:00 - 3:00 PM | Review of Documents | = | 1.0 Hours |
| November | 14 | 10:30 - 11:00 AM | Review of Documents | = | 0.5 Hours |
| November | 14 | 1:00 - 2:30 PM | Review of Documents | = | 1.5 Hours |
| November | 18 | 8:15 - 10:15 AM | Review Doc/phone | = | 2.0 Hours |
| November | 18 | 7:00 - 8:00 PM | Review of Documents | = | 1.0 Hours |
| November | 19 | 12:15 - 4:45 PM | Travel/Docs/Co. Atty. | = | 4.5 Hours |
| November | 22 | 2:45 - 3:45 PM | Review Documents | = | 1.0 Hours |
| November | 23 | 12:00 - 2:30 PM | Preparation of Report | = | 2.5 Hours |
| November | 24 | 8:00 - 10:00 AM | Preparation of Report | = | 2.0 Hours |
| November | 24 | 1:15 - 1:45 PM | Preparation of Documents | = | 0.5 Hours |
| November | 25 | 1:30 - 3:00 PM | Preparation of Report | = | 1.5 Hours |
| November | 26 | 9:15 - 10:15 AM | Preparation of Report | = | 1.0 Hours |
| November | 27 | 4:00 - 7:00 AM | Preparation of Report | = | 3.0 Hours |
| November | 27 | 11:15 - 12:15 PM | Preparation of Report | = | 1.0 Hours |
| November | 27 | 3:00 - 6:00 PM | Preparation of Report | = | 3.0 Hours |
| November | 28 | 12:00 - 1:00 PM | Preparation of report | = | 1.0 Hours |
| November | 29 | 10:10 - 11:10 AM | Preparation of Report | = | 1.0 Hours |
| November | 30 | 6:00 - 6:30 AM | Preparation of Report | = | 0.5 Hours |
| November | 30 | 1:00 - 3:00 PM | Preparation of Rpt./Phone | = | 2.0 Hours |
| December | 2 | 10:00 - 11:30 PM | Preparation of Report | = | 1.5 Hours |
| December | 3 | 1:20 - 4:20 PM | Preparation of Rpt./Phone | = | 3.0 Hours |

# Hours

| Date | Time | Activity | Hours |
|---|---|---|---|
| Oct 15 | 2:00 – 3:30 pm | Rev. Docs | 1.5 Hours |
| Nov 1 | 6:30 – 8:30 pm | Rev. Docs | 2 Hours |
| Nov 2 | 12:00 – 12:30 pm | Phone | .5 Hours |
| Nov 5 | 1:10 – 2:10 pm | Rev Docs | 1 Hour |
| Nov 5 | 6:30 – 7:30 pm | Rev Docs | 1 Hour |
| Nov 7 | 4:40 – 5:40 am | Rev Docs | 1 Hour |
| Nov 8 | 12:15 – 2:15 pm | Rev Docs | 2 Hour |
| Nov 10 | 10:00 – 11:30 am | Rev Doc | 1.5 Hours |
| Nov 10 | 1:00 – 2:00 pm | Rev Doc | 1 Hour |
| Nov 11 | 9:30 – 11:00 am | Rev Docs | 1.5 Hours |
| Nov 11 | 12:45 – 1:45 pm | Rev Docs | 1 Hour |
| Nov 12 | 11:00 – 12:00 N | Rev Docs | 1 Hour |
| Nov 13 | 11:30 – 12:30 pm | Rev Docs/phone | 1 Hour |
| Nov 13 | 2:00 – 3:00 pm | Rev Docs | 1 Hour |
| Nov 14 | 10:30 – 11:00 am | Rev Docs | .5 Hour |
| Nov 14 | 1:00 – 2:30 pm | Rev Docs | 1.5 Hours |
| Nov 18 | 8:15 – 10:15 am | Rev Docs/phone | 2 Hours |
| Nov 18 | 7:00 – 8:00 pm | Rev Docs | 1 Hour |
| Nov 19 | 12:15 – 4:45 pm | Travel/to Att. O. Rev Docs | 4.5 Hours |
| Nov 22 | 2:45 – 3:45 pm | Rev Docs | 1 Hour |
| Nov 23 | 12:00 N – 2:30 pm | Prep of Rpt | 2.5 Hours |
| Nov 24 | 8:00 – 10:00 am | Prep of Rpt | 2 Hours |
| Nov 24 | 1:15 – 1:45 pm | Prep Docs | .5 Hour |
| Nov 25 | 1:30 – 3:00 pm | Prep of Rpt | 1.5 Hours |
| Nov 26 | 9:15 – 10:15 am | Prep of Rpt | 1 Hour |
| Nov 27 | 4:00 – 7:00 am | Prep of Rpt | 3 Hours |
| Nov 27 | 11:15 – 12:15 pm | Prep of Rpt | 1 Hour |

39 HRS / 39 HOURS

Nov. 27   3:30 - 6:30 pm - Prep of Rpt   3 Hours
Nov. 28   12:00 - 1:00 pm - Prep of Rpt   1 Hour

(43)   (43 Hrs)

Nov 29   10:10 - 11:10 AM   Prep of Rpt   1 Hour
Nov 30   6:00 - 6:30 AM   Prep of Rpt   .5 Hours

44.5 Hours

Nov 30   1:00 pm - 3:00 pm   Phone Prep of Rpt   2.0 Hours

46.5

Dec 2   10:00 AM - 11:30 AM   Prep of Rpt   1.5 Hours
(48 HRS)

# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d, 2002 WL 500651 (D.Neb.)
(Cite as: 2002 WL 500651 (D.Neb.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Nebraska.
Gerald TLAMKA, Plaintiffs,
v.
Otha Lee SERRELL, et al., Defendants.
No. 4:97CV3212.

March 25, 2002.

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR EXCLUSION OF
EXPERT TESTIMONY AND MOTION TO
STRIKE

WARREN K. URBOM, Senior District Judge.

*1 This § 1983 action, brought by the plaintiff Gerald Tlamka against various **prison** personnel, arises from the death of the plaintiff's father, Frank Tlamka, who was incarcerated at the Nebraska State Penitentiary from December 2, 1994, through July 1, 1995.[FN1] Mr. Tlamka died after suffering an apparent heart attack while incarcerated. The plaintiff's remaining Eighth Amendment claim against the defendants Otha Lee Serrell, Michael T. Lichtenfeld, and Michelle D. Banks (f/k/a Michelle D. Williams) is scheduled for trial on April 15, 2002. Currently before me are the Plaintiff's Motion for Exclusion of Expert Testimony (*Daubert* Motion) and Motion to Strike, filing 163. After reviewing the submissions of the parties, I find that the plaintiff's former motion will be granted in part and denied in part, and his latter motion will be denied.

> FN1. In this order, I will refer to the plaintiff, Gerald Tlamka, as the plaintiff. I will refer to the plaintiff's father, Frank Tlamka, as Mr. Tlamka.

Motion for Exclusion of Expert Testimony: Dr. Okoye

The plaintiff first seeks to preclude the defendants "from qualifying Dr. Matthias Okoye as an expert in either cardiology or cardio pulmonary recessiation [sic] (CPR) ...." Filing 163 ¶ 1. More specifically, the plaintiff contends that Dr. Okoye should be barred from offering any opinions as to the following: "(1) proper and improper CPR procedures, (2) the medical or cardiological effects of discontinuing CPR, (3) whether interrupting CPR contributed to Frank Tlamka's death, (4) whether interrupting CPR had an adverse medical or cardiological effect on Frank Tlamka, and (5) whether Frank Tlamka required effective CPR after his collapse." *Id.* In support of his motion, the plaintiff notes that Dr. Okoye specializes in pathology, not cardiology. The plaintiff also directs me to excerpts from Dr. Okoye's deposition testimony, where the doctor "admits" that he does not see live patients, does not treat patients with heart conditions, has not performed CPR within the last five years, is not certified in CPR, and does not consider himself to be an expert in either CPR or cardiology. *See* Deposition of Dr. Matthias Okoye at 29:23-30:16; 30:17-31:15; 31:17-32:22; 86:19-87:2 (filing 165, Ex. 3). According to the plaintiff, such testimony demonstrates that any opinions by Dr. Okoye as to the subjects outlined above would exceed the scope of his expertise and should therefore be excluded.

In evaluating the admissibility of expert testimony under Federal Rule of Evidence (hereinafter Rule) 702, trial courts are assigned the role of "gatekeepers" to ensure that such testimony is "not only relevant, but reliable." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (extending *Daubert's* "basic gatekeeping obligation" to all expert testimony). Rule 702 provides that a witness can be qualified as an expert by "knowledge, skill, experience, training, or education," and it is the trial court's responsibility "to determine whether a par-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ticular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." FED.R.EVID. 702; *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir.2001) (citation omitted). After completing this task, the trial court "must continue to perform its gatekeeping role by ensuring that the actual testimony does not exceed the scope of the expert's expertise, which if not done can render expert testimony unreliable under Rule 702." *Wheeling Pittsburgh Steel Corp.*, 254 F.3d at 715 (citations omitted).

*2 In opposing the plaintiff's motion, the defendants note that "a qualified medical doctor cannot be excluded simply because he is not a specialist in a particular school of medical practice." Mem. Br. in Opp'n to Pl.'s Mot. for Exclusion of Expert Test. & Mot. to Strike [hereinafter Defendants' Brief] at 4; *see also Harris v. Smith*, 372 F.2d 806, 813-14 (8th Cir.1967) ("It is a well-established principle that the testimony of a qualified medical doctor cannot be excluded simply because he is not a specialist in a particular school of medical practice."). The defendants also contend that "because Dr. Okoye is a pathologist, he is well qualified to testify with respect to the cause of death of Frank Tlamka and whether any life saving measures would have prevented his death." Defendants' Brief at 3. I agree with the defendants.

During his deposition, Dr. Okoye explained that as a forensic pathologist, he "studies disease in a way that ... looks at proximate causation of death." Deposition of Dr. Matthias Okoye at 38:10-12 (filing 165, Ex. 3); *see also id.* at 38:8-9 ("Forensic pathology is that aspect of pathology that interfaces with the law."); STEDMAN'S MEDICAL DICTIONARY 1332 (27th ed.1999) (defining pathology as "[t]he medical science, and specialty practice, concerned with all aspects of disease, but with special reference to the essential nature, causes, and development of abnormal conditions, as well as the structural and functional changes that result from the disease processes"). The plaintiff has not objec-

ted to Dr. Okoye's qualifications as an expert in the field of forensic pathology. It seems to me that Dr. Okoye's considerable education and experience, as evidenced by his curriculum vitae and deposition testimony, render him well qualified to opine as to the cause of Mr. Tlamka's death, and whether any life-saving measures, such as CPR, could have prevented his death. *See* Curriculum Vitae of Dr. Matthias Okoye (filing 165, Ex. 2); *see also* Deposition of Dr. Matthias Okoye at 41:9-11 (filing 165, Ex. 3) (indicating that he has performed more than 10,000 autopsies throughout his career). Thus, although Dr. Okoye's lack of expertise in cardiology may be a proper point of cross-examination, it does not prevent him from testifying as to the above matters.

Finally, the plaintiff also seeks to prevent Dr. Okoye from offering any opinions as to "proper and improper CPR procedures." Filing 163 ¶ 1. I note that the defendants do not appear to dispute that such matters lie outside Dr. Okoye's area of expertise. *See* Defendants' Brief at 5 ("It is irrelevant whether Dr. Okoye is himself certified in CPR as it has never been indicated that he is to testify with respect to whether CPR was given to Frank Tlamka correctly or how to give CPR."). Accordingly, the Plaintiff's Motion for Exclusion of Expert Testimony will be denied insofar as it relates to Dr. Okoye, except to the extent it seeks to exclude opinions as to "proper and improper CPR procedures." Filing 163 ¶ 1.

Motion for Exclusion of Expert Testimony: Harold W. Clarke

*3 Next, the plaintiff challenges the reliability of the opinions offered by Harold W. Clarke, Director of the Nebraska Department of Corrections.[FN2] The crux of Clarke's expert opinion is that the correctional staff involved in the incident at issue "performed their duties as required of competent correctional professionals." Opinion of Harold W. Clarke ¶ 1 (filing 165, Ex. 6). In his report, Clarke explains that his opinion is based on a review of twelve reports of interviews conducted with in-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 500651 (D.Neb.)
(Cite as: 2002 WL 500651 (D.Neb.))

mates by the Nebraska State Patrol, thirteen incident reports prepared by members of the Nebraska State Penitentiary (hereinafter NSP) staff who had some involvement and/or knowledge of the emergency involving Mr. Tlamka, a report from a NSP Licensed Practical Nurse who had direct knowledge of the emergency, and reports on the autopsy/clinical evaluation of Mr. Tlamka prepared by a Nebraska State Patrol investigator. *Id.* ¶ 2; *see also* Deposition of Harold Clarke at 5:13-6:1 (filing 165, Ex. 4). Clarke states that he also relied on his "approximately 28 years of correctional experience," his "knowledge of the correctional process," and his "knowledge of the physical layout of the Nebraska State Penitentiary" in forming his opinion. Opinion of Harold W. Clarke ¶ 2 (filing 165, Ex. 6); *see also* Deposition of Harold Clarke at 5:23-6:1 (filing 165, Ex. 4) ("And, again, based on my own knowledge and judgment of what's required of staff on those occasions, I arrived at my position."); *id.* at 28:24-29:2 ("I know the standards that have been set and what's expected of staff by way of responding to medical emergencies."). Finally, during his deposition Clarke emphasized his considerable experience in "develop[ing] policies for correctional officers that guide[ ] their work," and "develop[ing] policies for the agency." Deposition of Harold Clarke at 17:18-20; 29:17-19 (filing 165, Ex. 4).

> FN2. Although the plaintiff seeks an order "precluding the Defendants from qualifying Harold W. Clarke as an expert," he does not raise any specific arguments directed at Clarke's qualifications as an expert in the field of corrections. Filing 163 ¶ 2. Instead, the plaintiff focuses his argument on the reliability of Clarke's opinion.

In challenging Clarke's opinion, the plaintiff initially notes that "Mr. Clarke did not read NSP policies or procedures as they existed in 1995 when Frank Tlamka died, he did not talk with anyone, he did not do any independent research or investigation, nor did he formulate a hypothesis or theory which could be tested or reviewed by others." Br. in Supp. of Pl.'s Mot. for Exclusion of Expert Test. ( *Daubert* Motion) & Mot. to Strike [hereinafter Plaintiff's Brief] at 8. In fact, the plaintiff argues, "Mr. Clarke used no methodology in reaching his opinions-all he did was read a few reports and make some factual assessments." *Id.* The plaintiff therefore concludes that "his opinions cannot be tested, there are no standards for controlling his techniques, and one cannot evaluate whether Mr. Clarke's opinions would be generally accepted within the field of professional correctional officers." *Id.*

Rule 702 requires that expert testimony be, *inter alia,* "the product of reliable principles and methods." FED.R.EVID. 702. As noted above, the trial court is charged with acting as a gatekeeper in determining whether a proposed expert's testimony is "not only relevant, but reliable." *Daubert,* 509 U.S. at 589; *Kumho Tire Co.,* 526 U.S. at 147; *see also United States v. Evans,* 272 F.3d 1069, 1094 (8th Cir.2001) ("[T]he judge is to act as a gatekeeper in determining whether the proposed expert's testimony both is relevant and rests upon a reliable foundation." (citations omitted)). In *Daubert,* the United States Supreme Court set forth the following four factors to guide trial courts in making this preliminary reliability assessment: (1) whether the expert's methodology has been tested; (2) whether the expert's theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the technique has been generally accepted in the proper scientific community. *See Daubert,* 509 U.S. at 593-94. The Court emphasized, however, that the inquiry envisioned by Rule 702 remains a flexible one, and that the above factors should not be regarded as "a definitive checklist or test." *Id.* at 594, 593; *see also Kumho Tire Co.,* 526 U.S. at 141-42 ("We also conclude that a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert,* the test of reliability is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2002 WL 500651 (D.Neb.)
(Cite as: 2002 WL 500651 (D.Neb.))

'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." (emphasis in original) (citation omitted)). Thus, such factors should be considered only "to the extent that they are relevant," and a court "must customize its inquiry to fit the facts of each particular case." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir.1999) (citations omitted).

*4 In opposing the plaintiff's motion, the defendants contend that Clarke's extensive experience with the Nebraska prison system, along with his formal education, training, and professional activities, render him "well qualified to testify about the matters encompassed in his Expert Opinion." Defendants' Brief at 8. More specifically, the defendants argue that as the individual "authorized [by statute] to promulgate the rules and regulations that dictate the daily operations of the correctional facilities of Nebraska, [Clarke] is more than adequately qualified to testify with respect to his knowledge of the policies and procedures of the NSP." *Id.* at 9; *see also* NEB.REV.STAT. § 83-173 (outlining the duties of the Director of Correctional Services, including the duty to "[e]stablish and administer policies and programs for the operation of the facilities in the department and for the custody, control, safety, correction, and rehabilitation of persons committed to the department"). With respect to the plaintiff's argument regarding Clarke's methodology, the defendants comment that "[i]t is difficult to think of any other methodology Director Clarke or any other corrections expert could utilize to formulate an expert opinion with respect to events such as those in this case." Defendants' Brief. at 10. I am inclined to agree with the defendants.

It seems to me that Clarke possesses the requisite level of knowledge, experience, training, and education that characterizes an expert in the corrections field. *See* FED.R.EVID. 702. A twenty-eight year veteran of this field, Clarke has held several positions throughout the Nebraska Department of Correctional Services and Department of Education. *See* Curriculum Vitae of Harold W. Clarke (filing 165, Ex. 5). As Clarke explained during his deposition, his responsibilities have included the development of policies and procedures for the NSP. *See* Deposition of Harold Clarke at 17:16-18:3; 29:11-21 (filing 165, Ex. 4); *see also* Curriculum Vitae of Harold W. Clarke (filing 165, Ex. 5). Thus, it seems to me that his testimony would, indeed, prove helpful to the jury in understanding the operations of this institution. Finally, like the defendants, I fail to see what other type of "methodology" an expert like Clarke would employ in analyzing the particular facts and issues arising from this case. *See, e.g., Evans*, 272 F.3d at 1094 (concluding that the district court did not abuse its discretion in permitting a police officer to offer expert testimony regarding "the operation of a prostitution ring, including recruitment of prostitutes and the relationship between pimps and prostitutes, and regarding jargon used in such rings."); *United States v. Johnson*, 28 F.3d 1487, 1496-97 (8th Cir.1994), *cert. denied*, 513 U.S. 1098 (1995), 513 U.S. 1195 (1995) (concluding that the district court properly allowed an unindicted coconspirator, a member of the Crensha Mafia Bloods gang, to testify "about the business of drug trafficking, the Bloods, and gang membership, and specifically about the associations between the defendants," based, in part, on the coconspirator's "extensive experience in the business of drug trafficking, evidenced by six years setting up various drug distribution centers in different cities"). In short, I am convinced that Clarke's opinion represents " 'more than [a] subjective belief or [an] unsupported speculation.' " *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 972 (8th Cir.1995) (brackets in original) (quoting *Daubert*, 509 U.S. at 590); *Jaurequi*, 173 F.3d at 1084 (affirming district court's exclusion of expert testimony where the expert "provided no basis for [the court] to believe that his opinions are anything more than unabashed speculation"). Accordingly, the plaintiff's Motion for Exclusion of

Not Reported in F.Supp.2d, 2002 WL 500651 (D.Neb.)
(Cite as: 2002 WL 500651 (D.Neb.))

Page 5

Expert Testimony will be denied, insofar as it challenges the methodology employed by Clarke in forming his opinion.

*5 The plaintiff also seeks to bar Clarke from testifying as to "CPR, emergency medical response procedures, and credibility." Plaintiff's Brief at 9. According to the plaintiff, Clarke lacks the "knowledge skill, practical experience, training, education, and employment experience" to testify as to such matters. *Id.*

In response, the defendants first explain that Clarke has not, and will not, state any expert medical opinion with respect to CPR. Clarke does opine that the correctional officers "exercised prudence and good judgment" in directing inmates to stop administering CPR to Mr. Tlamka. *See* Opinion of Harold W. Clarke ¶ 1 (filing 165, Ex. 6). However, I agree with the defendants that, for the reasons outlined above, this opinion is within Clarke's range of expertise, as it "relates only to the appropriateness of the actions of correctional officers and whether those actions were proper pursuant to DCS policy." Defendants' Brief at 11. Similarly, I see no reason why Clarke should be barred from testifying as to the emergency medical response procedures in place at the NSP.

The defendants also contend that Clarke has not, and will not, state any opinion as to the credibility of witnesses involved in the July 1, 1995, incident. According to the defendants, Clarke has merely commented that the consistency of the staff reports, and the inconsistency of the inmate witness reports, were factors he considered in reaching his ultimate opinion regarding the appropriateness of the actions taken by NSP staff. Clarke will be permitted to offer such testimony. Clarke will not, however, be permitted to opine as to the credibility of any particular witness.

Finally, in the last paragraph of his brief the plaintiff argues that Clarke should be barred from testifying that the correctional staff "[is] not culpable for the death of Mr. Tlamka." *See* Plaintiff's Brief at 10 (quoting Opinion of Harold W. Clarke ¶ 1 (filing 165, Ex. 6)). The defendants have not responded to this argument, and I am inclined to agree with the plaintiff that this opinion falls outside Clarke's area of expertise. Accordingly, Clarke will not be permitted to offer such testimony.

Motion to Strike

In his Motion to Strike, the plaintiff requests that I strike portions of Clarke's expert opinion report of December 27, 2001. *See* filing 163 ¶ 4. As the defendants note in their brief, however, neither party has included this report on the lists of exhibits for trial, and a motion to strike is therefore unnecessary. *See* filing 167 (Order on Final Pretrial Conference). Thus, the plaintiff's Motion to Strike, filing 163, will be denied.

IT IS ORDERED that the Plaintiff's Motion for Exclusion of Expert Testimony (*Daubert* Motion), filing 163, will be granted in part and denied in part. Dr. Matthias Okoye will not be permitted to testify as to "proper and improper CPR procedures," and Harold W. Clarke will be barred from (1) offering an opinion as to the credibility of any particular witness, and (2) testifying as to the defendants' culpability for the death of Mr. Tlamka.

*6 IT IS FURTHER ORDERED that the Plaintiff's Motion to Strike, filing 163, will be denied.

D.Neb.,2002.
Tlamka v. Serrell
Not Reported in F.Supp.2d, 2002 WL 500651 (D.Neb.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.